Yes, Chris Nugent, pro bono counsel with Holland and Knight in Washington, D.C. I'd like to reserve two minutes for rebuttal. Just watch the clock. Your Honor. May I begin? Oh, yes, you may, certainly. Okay, because the clock is not moving. No, it'll start to move. Oh, okay. We're pro bono counsel for Mr. Oshodi, who is a detained Nigerian activist in Igboy, Arizona, who's been detained for many years, who suffered severe persecution for his activism in Nigeria, including being severely tortured, burned with cigarettes and cigars, and sodomized by swagger canes as well as bottles. We believe that if removal is permitted in his case, he'll face life-threatening harm as a dissident activist. He was denied relief by immigration judge Slato, whose record on these cases from 2001 to 2006 was a 90 percent denial rate, and according to – No, really. Do we have to take that into account? It's up to you, Your Honor. It's public record. It's under TRAC, the transaction records. Is it probative of anything? What? Is it probative of anything? Just that only 10 percent of his respondents appearing before him were granted relief. How does that compare to other immigration judges? It's supremely low, Your Honor. And what's the average for other immigration judges? Do you have that information? I believe it's about 53 percent approval rate. But I wish to explain briefly the fundamental errors in the underlying – So would that mean if an immigration judge's decision comes before us with a 98 percent approval rate, that we should take that into consideration, and perhaps when we're looking at a petition for review or when we're looking at an appeal from the government? I think it's a relevant factor because it shows a pattern in practice in terms of adjudicating these cases. Do you have any case from any circuit that has considered that argument favorably? I believe that the Seventh Circuit has done some citations to immigration judge denial rates. As a basis for a ruling? No, but just in terms of dicta. But I'm here to explain briefly why we believe that there were fundamental statutory and due process violations in the underlying proceedings which led to the perverse result that warrants relief by this Court. Well, why don't we get to the credibility determination? Why don't you focus on that? Yeah. But first and foremost, before credibility, may I discuss the mandate rule? Because it's tied to credibility. Oh, you may do so, but just be sure you don't overlook the credibility issue. Okay. On the mandate rule, the Board of Immigration – Office of Immigration Litigation approached us to remand this case back to the Board of Immigration Appeals for consideration of the legislative history of real ID for adverse credibility determination. So it was unopposed to the motion, and so then it was mandated back to the Board of Immigration Appeals. Board of Immigration Appeals member Hess, though, failed to follow the mandate of the Court. The mandate was to assess the impact of the real ID on the BIA's – the Board of Immigration Appeals' findings that Ashodi's claims were not sufficiently corroborated as well as the legislative history of the real ID and its application to the immigration judge's adverse credibility determination. So how was the mandate disregarded? He ignored the legislative – Hess ignored the legislative history, and the central question is what's – which was whether the real ID requires notice to the applicant that corroborating evidence is needed prior to making an adverse credibility finding. That's now the law of the land in the Seventh Circuit, the Third Circuit, and the Fourth Circuit, per the real ID. In particular – Well, the IG here – the IG here strongly recommended that your client corroborate his charges and so forth. And what more would you expect than the warning that was given to him? Well, in particular, Judge Hess ignored the congressional history, including Senator Brownback's statements clarifying the underlying congressional intent for real ID that an adverse credibility determination must be reasonable and based on material prior fact. We repeatedly had that in all of our briefs. The Real ID Act completely eliminated any heart of the claim type of requirement for anything that the totality of the testimony is considered. The heart is – that was the law prior to the real ID. Right. But real ID did not mean that anything goes for purposes of making an adverse credibility determination. Well, it means whatever the plain reading of the Act means, and it says all aspects of the credibility are taken into consideration. Under the totality of circumstances test with relevant factors. And we, you know, we contend that in the case of the underlying credibility determination, getting to that issue, that the immigration judge's credibility determination was based on not – on immaterial, not relevant factors. You're trying to go back to the old test. That's the problem. When you say immaterial, that's really a euphemism for going to the heart of a claim. Well, they say relevant factors, so relevant is comparable to material. How do you respond to the argument that the Real ID Act put all aliens and their attorneys on notice that – that they should corroborate and that the importance of obtaining and preserving corroborating evidence whenever available? But Mr. Asciotti was never affirmably put on notice of the corroboration requirement. He himself puts counsel on notice of that. Yes, and he only retained counsel the day before he appeared at his hearing. And he – the counsel was only allowed to ask ten questions before the immigration judge curtailed his testimony. So, you know, Mr. Asciotti himself was not put on notice. And if you look at the exchange with Larry, AR 637, that was between Asciotti and Larry, that Larry is one of Asciotti's siblings. The immigration judge asked questions as to Larry's in the courtroom. Did he submit an affidavit? Is he going to testify? But he never affirmatively puts him on notice that why – why don't you have an explanation for me as to why Larry is not – did not submit an affidavit? Why did he? Well, the IG is not of counsel to the Petitioner or the Respondent. I mean, it seems to me anyone coming before an IG would know that you've got to corroborate anything that you're – that's just subject to his word without any verification. Yes. And he had a lot of corroborating evidence that was not even considered in this case, including forensic and psychological evidence of the past torture that he suffered. And then there was the exclusion of the Nigerian arrest records and medical reports based on lack of authentication, because he was pro se and was unable to get the authentication process completed. So there was other evidence that was not thoroughly considered by the IG as well as the BIA in this instant matter. And we would – in terms of the mandate issue, the other thing that was – Hess only in one sentence refers to the IG's findings as to real ID and says that he failed to provide corroborating evidence. I don't think per the mandate that's a particularized enough analysis as required by the mandate and therefore would warrant remand unto itself. Counsel, what's our standard of review regarding whether or not the mandate was complied with? That I have for you – if I can get that to you on rebuttal, we've got 14 seconds. And then give me your best case that supports your argument that the mandate was not complied with. Yes, Your Honor. All right. Okay. Thank you. You're down to two minutes, which we may reserve. We'll hear from the government. Good morning, Your Honors, and may it please the Court. Your Honors, the question before the Court today is whether substantial evidence supports the agency's adverse credibility determination. Now, under the substantial evidence standard of review, an agency's factual findings must be upheld unless the record compels a contrary conclusion. Now, Your Honors, no such conclusion exists in this case. Petitioner failed to provide credible evidence with respect to several aspects of his claim, specifically his identity, the basis of his fear of persecution, and the history of his family's political involvement. Now, Your Honors, Real ID Act does apply in this case. Therefore, the deficiencies in Petitioner's testimony need not relate to the heart of his claim. But shouldn't he – did he cut him off on some testimony? Shouldn't he put him on notice as to what was crucial or that he should have corroborated? Well, Your Honor, you're asking two questions, one in terms of his testimony being cut off. The immigration judge specifically explained to the Petitioner in this case that he did not need a line-by-line recitation of his asylum application. After this warning, Petitioner proceeded to testify in regard to one of the events underlying his persecution claims in regard to his training in political strategy. He also, on cross-examination, was able to address all of the deficiencies supporting his adverse credibility determination. Therefore, there was no prejudice in this case. In fact, Petitioner himself merely offers the conclusory statement that absent these errors, he would have presented a meritorious claim for withholding of removal. Now, Your Honors, as to your – as to your second question regarding corroboration, as you suggested yourself, Judge Cowan, the Real ID Act and specifically the burden provisions of the INA's – the burden of proof provisions specifically place an applicant on notice. Under Section 208B1bi, an applicant is on notice that he must provide evidence in support of his claim for relief. Now, in this case, the immigration judge, moreover, before – before the merits hearing specifically did notify, nonetheless, he notified Petitioner both that there was a recent change in corroboration requirements and that he recommended, he expressly recommended that Petitioner provide such corroboration. Counsel, what's your response to opposing counsel's argument that the mandate was not complied with? Your Honor, the board did address the mandate. There's – there's two instructions to the mandate, one regarding corroboration, one regarding the legislative history of credibility provisions. Now, Your Honor, with regard to – with regard to the instruction on corroboration, the board specifically stated that the Real ID Act codified the board's existing interpretation of the corroboration requirements. Now, it cited its own decision in matter of JYC, which said that once a trier fact requires corroboration evidence, an applicant must either provide that evidence or a compelling explanation for its absence. Now, the board then applied that analysis to this case and stated that once the immigration judge required the corroboration, the Petitioner both failed to produce it and failed to produce any explanation for its absence, which was especially telling here where his brother attended the merits hearing and could have corroborated any number of claims which were central to his persecution claims regarding his identity, regarding how many siblings he had, and regarding the history of his family's political involvement. Now, if I could briefly address, Judge Callan, your – Well, you haven't finished addressing my question. What about the – Oh, I'm sorry, Your Honor. To address the legislative history? I'm sorry, Your Honor. Yes. In addressing the legislative history, the – this Court specifically asked that the board address legislative history of the Real ID Act's credibility provisions and its impact upon the immigration judge's credibility determination, as well as any other issues the board deems appropriate. Now, the board, in addressing this instruction, cited this Court's decision in Jabril. Now, in Jabril, which this – which the board described as an observation regarding the intent of the Real ID Act's credibility provisions and their impact on the Ninth Circuit's heart-of-the-claim requirement. Now, the board addressed that decision. It cited language from that decision, which addressed, among other things, the proper bases for an adverse credibility determination. A brilliant decision, I must say. A brilliant decision. A brilliant decision, Judge Scanlon. And then the board turned that analysis to this case and specifically said that those changes engendered by the Real ID Act, specifically the elimination of the heart-of-the-claim requirement, sustain the adverse credibility determination in this case, where some Petitioner's deficiencies did not go to the heart-of-his-claim. So your argument is that by citing Jabril and quoting that at length, that was the board's compliance with the mandate requirement to address the legislative history. It did it by way of referencing Jabril. Is that your argument? Yes, Your Honor, both by referencing the language in Jabril and by describing that decision as an observation regarding the Real ID Act's intent, specifically regarding the credibility provisions. Now, if I could finish my answer, Your Honor, to Judge Cowan's question about the separate notice requirement that Petitioner argues for. The Seventh Circuit best ruled on this recently in the case Raphael v. Mukasey, in which the court What's the Ninth Circuit law on this? Pardon me? What is the Ninth Circuit law on this, if any? Your Honor, the Ninth Circuit law is similar to all other circuits which support what I've already claimed, which is that the burden of proof provisions of the Real ID Act is to hold a Petitioner or an applicant on notice of the need to provide corroborative evidence. Specifically, then, that there's no bifurcated trial in essence. There's no need to first identify evidence that a Petitioner would need to corroborate and then give them an opportunity to obtain that evidence. Now, the Seventh Circuit said to hold that a Petitioner must receive additional notice from the IJ and then an additional opportunity to provide corroborative evidence before an adverse credibility ruling would necessitate two hearings. The first to decide whether such corroborating evidence was required, and then another after a recess to allow the alien more time to collect such evidence. Such an approach would seem imprudent where the law clearly notifies aliens of the importance of corroborative evidence. What about the Third Circuit? Your Honor, no circuit as of right now has addressed the credibility provisions of the Real ID Act and said there's a required bifurcated test. What about the Ture case, a corroboration analysis? Your Honor, Petitioner cited both the Ture case out of the Third Circuit and the Ikama O'Bombie case out of the Seventh Circuit, both of which address a separate issue, which is whether or not an adverse credibility finding needs to be explicitly made in an agency's decision in order to then also require corroboration. Now, those decisions are, first of all, irrelevant to this case because this is about whether or not corroboration is first required as a bifurcated trial. It's separate. Well, on page 323 of Ture, it talks about whether corroboration is necessarily required. Your Honor, but I don't believe that that case suggests that that you first, that an immigration judge must first provide an applicant with notice to provide that corroboration and then an opportunity to gather it. We adopted these BIA rules as our own and formulated a three-part inquiry. I'm reading from page 323. Yes. An identification of facts for which it is reasonable to expect corroboration, the presence or absence of such corroboration in the record, and the adequacy of applicant's explanation for its absence. We have repeatedly held that the BIA's, or as here IJ's, failure to engage in a three-part inquiry requires that the BIA's findings regarding corroboration be vacated and remanded. Yes, Your Honor. Again, that's about whether or not the IJ, in rendering his decision, needs to explicitly issue an adverse credibility determination in order to then cite deficiencies in corroboration. Now, in this case, the immigration judge did specifically render an adverse credibility determination. The immigration judge here said, Considering the existence of discrepancies and inconsistencies in the record, the Court draws an adverse inference regarding the overall credibility of Petitioner's claims. Now, Your Honor, getting to the inconsistencies which were substantial in this case, Petitioner first failed to credibly establish his identity. Petitioner has admittedly used several false identities while in this country, which under this Court's jurisprudence can by itself sustain an adverse credibility determination. How about the fact that he cut off the medical and psychological reports and so forth, which to me was almost true that he was prejudiced against the Petitioner? Your Honor, there's no demonstration of prejudice here. And if I'm going to cut off someone testifying from something that they claim is going to be helpful, you don't think that's indicative of anything? Well, Your Honor, you don't mean to say that he excluded those documents, because those documents were admitted. And with regard to the testimony, as I said before, Your Honor, Petitioner was still able to submit his claims through his testimony, through the testimony of his expert on cross-examination.  in his testimony on cross-examination. Not in very much detail. Pardon me? He didn't let us testify in much detail. Your Honor, Petitioner is represented by counsel. Counsel proceeded after the immigration judge's warning, and he did testify in regard to incidents underlying his persecution claim and additional factors. And then counsel submitted the case based on the asylum application, the documentary submissions, and the testimony that Petitioner was able to give, in addition to his cross-examination. Now, Your Honor, additional inconsistencies in this case regarded Petitioner's family, which were especially important here, considering that his persecution claims centered closely around his family name of a shoddy and the family's political history. Now, Petitioner was unable to testify consistently regarding the basis of his fear of persecution. In his asylum application declaration, he stated that it was his mother's involvement in politics that was a source of his persecution fear. In his asylum officer interview, he said it was his father's involvement. And on cross-examination, he said it was his grandfather's involvement. He was also unable to consistently say how many siblings he had or whether or not his father was even alive. Your Honors, if there's no further questions, may I briefly conclude? I have a question. On page 324 of the Ture decision, it talks about the corroboration requirement and says, it was not until the oral decision that the I.J. indicated that she expected corroborating evidence. Doesn't that imply that the notice is required during the oral testimony? Your Honors, I still submit that in that case, the I.J. still, because the I.J. did not give an adverse credibility determination, it was only because of that that the notice being at the first time in the immigration judge's decision was fatal to the I.J.'s reasoning. Otherwise, if the adverse credibility determination is explicitly made, one can. Explicitly made when? Explicitly made in the decision itself. In the oral decision? In the oral decision itself. So that case, as far as I understand, Your Honor, that case stands for the proposition that an immigration judge, in order to require corroboration in his decision, must in that same decision explicitly issue an adverse credibility determination. I think you're stretching it, but you answered her question. If I may briefly conclude, Your Honor. Yes, you may. Ultimately, this case turns on the deferential standard of review for an agency's factual findings, which mandates that the Court can only reverse an adverse credibility determination if the record compels a contrary conclusion. I have one more question. I'm sorry. What's your response to opposing counsel's observation that this I.J. has a denial rate that far exceeds the average? Your Honor, it's probative of nothing. The I.J.'s and I.J.'s denial rate cannot be probative of anything in this case, or any case. So we just ignore it? Absolutely, Your Honor. It's never, as far as I understand, in any circuit been used as the basis for any denial of an agency's decision. Thank you, counsel. Mr. Nugent, you have some reserve time. Thank you, Your Honor. Okay. In terms of the mandate, the rule of the mandate requires that a lower court act on the mandate of the appellate court without variance or examination, only execution. To determine whether a lower court has executed its mandate, this Court looks to the instructions on remand and simply asks whether they've been followed. In our case, I would contend that by relying on Gibral for legislative history, that's Ninth Circuit case law. It was dicta in Gibral that was being relied on for legislative history. And we had been, you know, reiterating Congressman Brownback's interpretation underlying of the underlying intent of written. Remarks from one congressman does not necessarily relay the intent of the entire legislative body. Right. But his remarks were pretty, he was a key player in conferencing real ID and ameliorating the provisions on adverse credibility. And in reality, I mean, the Real ID Act was in part to get away from this gotcha game where adverse credibility determinations were being made at the end of a decision. Here it was a way to put, you know, the alien on notice of the need for corroborating evidence and provide an explanation as to its lack of corroborating evidence, as opposed to doing it at the end as a gotcha game where the alien is caught, you know, without corroborating evidence. There's also a due process issue that's very significant here. Ninth Circuit precedent, Coleminar v. INS, is opposite, since O'Shodey was refused to be able to testify about anything that was included in his written application. And that's where he was cut off after ten questions. And then, yes, he was allowed to go back and talk, but it was not a focused inquiry, you know, and that was not fair to the due process rights of O'Shodey, which I think warrants a remand unto itself, as it did in Coleminar. Counsel, you should be summing up. Your time is running out. I have seven seconds. And then finally, yeah, I would just reiterate that REAL ID really stands for Notice and Opportunity to Provide Corroborating Evidence, and that's how the other circuits are trending now, and people are getting notice and opportunity before an adverse credibility determination is made. Very well. Thank you, counsel. Thank you, Your Honor. The case just argued will be submitted for decision.
judges: Cowen, O'scannlain, Rawlinson